IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAIL CUSTADIO,<br>Administratrix of the Estate of Stephen Custadio<br><br>    Plaintiff,<br>v.<br><br>EUROPEAN COLOUR PLC<br><br>    Defendant. | Civil Action No. 05-CV-10556-JLT |

**DEFENDANT EUROPEAN COLOUR PLC'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant European Colour plc ("European Colour"), the ultimate parent corporation to Roma Color, Inc. ("Roma"), respectfully moves this Court to dismiss the Complaint of Plaintiff Gail Custadio, administratrix of the estate of Stephen Custadio ("Custadio"), for lack of personal jurisdiction. In the alternative, pursuant to Fed. R. Civ. P. 56, European Colour moves this court to grant summary judgment in favor of European Colour on all counts. European Colour also requests this Court to stay all discovery, including the automatic required disclosures pursuant to Local Rule 26.2(A) of the United States District Court for the District of Massachusetts, pending resolution of this Motion.

In support of this Motion, and as set forth more fully in the Memorandum of law submitted herewith, European Colour states as follows:

1.  This Court lacks the power to exercise general *in personam* jurisdiction over European Colour as there is no evidence that European Colour has maintained a continuous and systematic link with Massachusetts such that it has subjected itself to a Massachusetts state court

on all matters, including those matters unrelated to European Colour's contacts with Massachusetts.

2. This Court also lacks the power to exercise specific *in personam* jurisdiction over European Colour as Custadio's claims do not arise out of any European Colour activity in Massachusetts sufficient to satisfy the Massachusetts long arm statute or the due process requirements of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV; Mass. Gen. Laws. ch. 223A, § 3 (2000).

3. There is no adequate justification for this Court to pierce the corporate veil of Roma for the purpose of exercising personal jurisdiction over European Colour as there is no evidence of gross inequity or pervasive control such that there is a fraudulent consequence of such intercorporate relationship or a confused commingling such that there is a substantial disregard of the separateness of the corporate entities.

4. Accordingly, European Colour requests that this Court dismiss the Complaint in its entirety for lack of personal jurisdiction over European Colour.

5. If this Court finds that European Colour is subject to personal jurisdiction, European Colour alternatively moves this Court to enter summary judgment in favor of European Colour on all counts. By moving for summary judgment as an alternative ground, European Colour does not waive its arguments that it is not subject to personal jurisdiction in this Court. European Colour relies on its summary judgment arguments *only if* this Court finds that European Colour is subject to jurisdiction here, and without waiving its right to immediately appeal from any finding that this Court has power to exercise personal jurisdiction in this case. Moreover, all of the facts that European Colour relies on for its summary judgment argument come from the facts that European Colour relies on in support of its personal jurisdiction

arguments. *See* Fed. R. Civ. P. 12(h)(1) (stating that the personal jurisdiction defense is waived "if it is neither made by motion under this rule nor included in a responsive pleading . . ."); *Tramonte v. Korean War Veteran's Ass'n, Inc.*, 2002 U.S. Dist. LEXIS 7243, at **4-5 (D. Mass. Feb. 5, 2002) (stating "the relevant inquiry is whether the defendant included the lack of personal jurisdiction in its 'first defensive move, be it a Rule 12 Motion or a responsive pleading'" (quoting *Glater v. Eli Lilly Co.*, 712 F.2d 735, 738 (1st Cir. 1983)); *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 623 F. Supp. 153, 156 (D. Pa. 1985) (finding waiver of personal jurisdiction when "[a]t no time did [defendant] state that this motion [to assert a counterclaim] was in *the alternative to the defense[] of lack of jurisdiction . . .*") (emphasis added); *see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 284 F. Supp. 2d 204, 211 (explaining that one defendant "moved individually to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment"); *Milford Power Ltd. P'ship by Milford Power Assocs. v. New England Power Co.*, 918 F. Supp. 471, 478 (D. Mass. 1996) (stating that "[b]ecause a motion to dismiss for lack of personal jurisdiction seeks the same relief as a motion for summary judgment, the First Circuit Court of Appeals has found that 'the difference in name is unimportant. In any event, the affidavits presented are available on either motion'" (quoting *Am. Express, Int'l v. Mendez-Cappellan*, 889 F.2d 1175, 1178 (1st Cir. 1989)).

6. European Colour is not directly liable to Custadio because European Colour never owed Stephen Custadio ("Decedent"), the former husband of Custadio and a Roma employee who was fatally injured while working at Roma, a duty to ensure a safe working environment at Roma.

7. European Colour is also not indirectly liable to Custadio because there is no evidence to justify piercing the corporate veil of Roma as well as the corporate veils of the

several intermediate parent entities necessary to hold European Colour liable for the activities at Roma.

8. Accordingly, this Court should grant European Colour's Motion for summary judgment because European Colour was not directly or indirectly liable to Custadio or the Decedent as a matter of law.

9. Assuming *arguendo* that this Court could pierce Roma's corporate veil to hold European Colour liable for the activities at Roma, European Colour alternatively moves this Court to enter summary judgment on all counts because any claim that Custadio may have against European Colour is barred by the exclusivity provision of the Massachusetts Worker's Compensation Act as a matter of law. *See* Mass. Gen. Laws. ch. 152, § 1 *et seq.*

## EUROPEAN COLOUR'S L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

1. European Colour is a corporation organized under the laws of England and Wales with a principal place of business located at Hempshaw Lane, Stockport, Cheshire, England. Affidavit of Stephen Ralph Smith ("Smith Aff.") at ¶ 3 (submitted herewith).

2. At all times since January 2003, European Colour has been, and continues to be, the ultimate parent corporation to Roma within the European Colour family of corporations. At all times since January 2003, there have been several corporations, each successively owned in whole or in part by parent corporations, between Roma and European Colour. In November 2003 at the time of the Decedent's accident, Roma was wholly owned by a Massachusetts corporation which was then owned by a Massachusetts general partnership, the two partners of which were two separate corporations organized under the laws of England and Wales, each of which was then in turn owned by European Colour. Today, the corporate structure remains the

same except that the Massachusetts partnership has been replaced by a Massachusetts corporation for tax reasons. Smith Aff. at ¶ 4.

3. At all times since at least August 2003, European Colour has had, and continues to have, its own Board of Directors and its own executive officers, separate and independent from any of its subsidiaries, including Roma. In November 2003, European Colour had five directors, one of which was also a director of Roma. Today, European Colour has four directors, two of which are also directors of Roma. Smith Aff. at ¶ 5.

4. All of European Colour's corporate employees, officers, and/or executives are located in the United Kingdom. European Colour does not have corporate offices, corporate employees, officers, and/or executives in Massachusetts. Smith Aff. at ¶ 6.

5. At all times since at least August 2003, European Colour has maintained separate financial records and a bank account separate from Roma. Smith Aff. at ¶ 7.

6. At all times since at least August 2003, European Colour has maintained, and continues to maintain, separate corporate records. Smith Aff. at ¶ 8.

7. At no time since August 2003 has European Colour owned any property in Massachusetts. Smith Aff. at ¶ 9.

8. European Colour has never been registered or licensed to do business in Massachusetts. Smith Aff. at ¶ 10.

9. Since at least August 2003, European Colour has not bought or sold products of any type in Massachusetts. Smith Aff. at ¶ 11.

10. European Colour has not transacted any business in Massachusetts or entered into any contracts in Massachusetts for the purchase or sale of goods and services in Massachusetts. Smith Aff. at ¶ 12.

11. European Colour has never paid Massachusetts state taxes or United States federal taxes. Smith Aff. at ¶ 13.

12. Since at least August 2003, European Colour has never supplied, and does not presently supply, any materials of any kind to Roma for its manufacturing operations. Smith Aff. at ¶ 14.

13. Since at least August 2003, European Colour's name has not appeared on any of Roma's marketing brochures, annual reports, letterhead, training manuals, employee safety procedures/handbook, or associate handbook other than to indicate that European Colour is the ultimate parent corporation of Roma. Smith Aff. at ¶ 15.

14. Since at least August 2003, European Colour's officers and/or executives have had limited contact with Massachusetts. Smith Aff. at ¶ 16.

15. European Colour is not responsible for and has never assumed any affirmative legal duty to ensure a safe working environment for Roma's employees. European Colour has also never entered into a contract with Roma to provide safe working conditions for Roma's employees. Smith Aff. at ¶ 17.

16. Since at least August 2003 through the present, European Colour, its executives, directors, and/or employees have not supervised or directed Roma or any of Roma's employees and/or executives regarding the day-to-day operations of Roma or the Roma facility, including the operation, maintenance, and/or repair of the materials lift at Roma that was involved in the Decedent's fatal accident (the "lift"). Smith Aff. at ¶ 18.

17. Before Decedent's death, the Chairman of European Colour, made approximately three visits to discuss, among other things, the overall safety philosophy and safety considerations regarding the Roma facility with the management of Roma. During these visits

and at all other times, the Chairman emphasized the importance of safety and encouraged Roma to ensure safe working practices as a general matter. The Chairman further instructed Roma management to disclose any potential hazards to European Colour. At no time did anyone at European Colour have any discussions with anyone at Roma concerning the lift prior to the Decedent's fatal accident. Moreover, no one at European Colour had any knowledge of any potential safety issues, hazards, or concerns relating to the lift prior to the Decedent's death. Smith Aff. at ¶ 19.

18. Roma, doing business as EC Pigments, is a Massachusetts corporation located in Fall River, Massachusetts. Affidavit of Nadilio D. Almeida ("Almeida Aff.") at ¶ 3 (submitted herewith).

19. Roma has consistently observed required corporate formalities since its incorporation in 1984, including, for example, electing its own Board of Directors and officers on a periodic basis, making required annual and other filings with the Massachusetts Secretary of State, paying its own property and withholding taxes and, in affiliation with the other United States subsidiaries in the corporate family, paying state and federal income taxes, taking corporate actions through its Board of Directors and stockholders and maintaining records of those actions in its corporate minute book. Almeida Aff. at ¶ 4.

20. At all times since at least January 2003, Roma has had, and continues to have, its own Board of Directors, its own executive officers, and its own employees. Almeida Aff. at ¶ 5.

21. At all times since at least January 2003, Roma was registered, and is currently registered, to do business in Massachusetts as a Massachusetts corporation, has maintained, and continues to maintain, current and accurate filings with the Massachusetts Secretary of State, and

has taken and recorded, and continues to take and record, the action of its stockholders and Board of Directors in its corporate minute book. Almeida Aff. at ¶ 6.

22.     At all times since at least January 2003, Roma's management has made, and continues to make, all decisions regarding the day-to-day operations of Roma's business and did so at the time of the Decedent's accident with the Roma materials lift (the "lift"). Almeida Aff. at ¶ 7.

23.     At all times since at least January 2003, Roma has had, and continues to have, adequate capitalization. For example, at the close of fiscal year 2003 (March 31, 2004), Roma's balance sheet indiciated that it had $ 10,058,884 in assets and $ 4,036,996 of net worth. In addition, Roma has maintained its own line of credit with a commercial bank independently of any parent corporation, and without guarantees or other credit enhancements of any parent corporation. This line of credit was established on April 29, 2004. Almeida Aff. at ¶ 8.

24.     At all times since at least January 2003, Roma has maintained, and continues to maintain, separate financial records and separate bank accounts under the Roma name. Almeida Aff. at ¶ 9.

25.     At all times since at least January 2003, Roma has maintained, and continues to maintain, separate corporate records. Almeida Aff. at ¶ 10.

26.     At all times since at least January 2003, Roma has paid out, and continues to pay out, dividends when available. Almeida Aff. at ¶ 11.

27.     Roma was not insolvent at the time of Decedent's accident with the lift. Roma has not been insolvent since its incorporation in 1984. Almeida Aff. at ¶ 12.

28. At all times since at least January 2003, Roma has purchased, and continues to purchase supplies for its manufacturing operations from distributors and companies in the United States. European Colour has never supplied any materials to Roma. Almeida Aff. at ¶ 13.

29. Roma's associate handbook, which was provided to the Decedent, explicitly stated that Roma is committed to a safe work environment and lists the safety practices that Roma expects its employees to follow. Almeida Aff. at ¶ 14.

30. At all times since at least January 2003, the operation of the Roma facility, including the operation, maintenance, and/or repair of the lift has been, and continues to be, conducted and supervised by Roma employees and/or executives without direct supervision or oversight by European Colour, its executives, directors, and/or employees. Almeida Aff. at ¶ 15.

31. At all times since at least January 2003, Roma has had, and continues to have, its own substantial insurance coverage, including a worker's compensation insurance policy, for which Roma has independently paid, and continues to independently pay, the premiums to maintain such coverage. Almeida Aff. at ¶ 16.

32. Following the Decedent's fatal accident, Custadio filed a claim for benefits through Roma's worker's compensation insurance policy. Benefits were awarded and Custadio has been receiving weekly payments of $ 884.46 in connection with the death of the Decedent since November 26, 2003, approximately six days after the accident took place. Almeida Aff. at ¶ 17.

WHEREFORE, European Colour respectfully requests this Court to:

(1) Dismiss the Complaint in its entirety for lack of personal jurisdiction over European Colour pursuant to Fed. R. Civ. P. 12(b)(2);

(2) In the alternative, enter summary judgment in favor of European Colour on all counts and dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 56;

(3) Stay all discovery, including automatic initial disclosures pursuant to L.R. 26.2, pending the resolution of this Motion;

(4) Schedule a hearing on this Motion;

(5) Award European Colour its attorneys fees and costs; and

(6) Grant such other relief as justice requires.

Respectfully submitted,

EUROPEAN COLOUR, PLC

By its attorneys,

\_\_\_\_/s/ Timothy W. Mungovan_____
J. William Codinha, BBO No. 087740
Timothy W. Mungovan, BBO No. 600702
Gina M. McCreadie, BBO No. 661107
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
Tel:  (617) 345-1000
Fax:  (617) 345-1300

Dated:  April 27, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAIL CUSTADIO,<br>Administratrix of the Estate of Stephen Custadio<br><br>       Plaintiff,<br>v.<br><br>EUROPEAN COLOUR PLC<br><br>       Defendant. | Civil Action No. 05-CV-10556-JLT |

**AFFIDAVIT OF NADILIO D. ALMEIDA**

I, Nadilio D. Almeida, state as follows:

1. I am an adult resident of the Commonwealth of Massachusetts and make this Affidavit based upon my own knowledge and, in certain instances, discussions with knowledgeable persons at Roma.

2. I have been the Manufacturing Manager at Roma Color, Inc. ("Roma") since approximately March of 1997 and I have been an employee of Roma since October 4, 1992.

3. Roma, doing business as EC Pigments, is a Massachusetts corporation located in Fall River, Massachusetts.

4. Roma has consistently observed required corporate formalities since its incorporation in 1984, including, for example, electing its own Board of Directors and officers on a periodic basis, making required annual and other filings with the Massachusetts Secretary of State, paying its own property and withholding taxes and, in affiliation with the other United States subsidiaries in the corporate family, paying state and federal income taxes, taking

BOS1485666.2

corporate actions through its Board of Directors and stockholders and maintaining records of those actions in its corporate minute book.

5. At all times since at least January 2003, Roma has had, and continues to have, its own Board of Directors, its own executive officers, and its own employees.

6. At all times since at least January 2003, Roma was registered, and is currently registered, to do business in Massachusetts as a Massachusetts corporation, has maintained, and continues to maintain, current and accurate filings with the Massachusetts Secretary of State, and has taken and recorded, and continues to take and record, the action of its stockholders and Board of Directors in its corporate minute book.

7. At all times since at least January 2003, Roma's management has made, and continues to make, all decisions regarding the day-to-day operations of Roma's business and did so at the time of Stephen Custadio's accident with the Roma materials lift (the "lift").

8. At all times since at least January 2003, Roma has had, and continues to have, adequate capitalization. For example, at the close of fiscal year 2003 (March 31, 2004), Roma's balance sheet indiciated that it had $10,058,884 in assets and $ 4,036,996 of net worth. In addition, Roma has maintained its own line of credit with a commercial bank independently of any parent corporation, and without guarantees or other credit enhancements of any parent corporation. This line of credit was established on April 29, 2004.

9. At all times since at least January 2003, Roma has maintained, and continues to maintain, separate financial records and separate bank accounts under the Roma name.

10. At all times since at least January 2003, Roma has maintained, and continues to maintain, separate corporate records.

2

11. At all times since at least January 2003, Roma has paid out, and continues to pay out, dividends when available.

12. Roma was not insolvent at the time of Mr. Custadio's accident with the lift. Roma has not been insolvent since its incorporation in 1984.

13. At all times since at least January 2003, Roma has purchased, and continues to purchase supplies for its manufacturing operations from distributors and companies in the United States. European Colour plc has never supplied any materials to Roma.

14. Roma's associate handbook, which was provided to Mr. Custadio, explicitly stated that Roma is committed to a safe work environment and lists the safety practices that Roma expects its employees to follow.

15. At all times since at least January 2003, the operation of the Roma facility, including the operation, maintenance, and/or repair of the lift has been, and continues to be, conducted and supervised by Roma employees and/or executives without direct supervision or oversight by European Colour plc, its executives, directors, and/or employees.

16. At all times since at least January 2003, Roma has had, and continues to have, its own substantial insurance coverage, including a worker's compensation insurance policy, for which Roma has independently paid, and continues to independently pay, the premiums to maintain such coverage.

17. Following Stephen Custadio's fatal accident, Gail Custadio filed a claim for benefits through Roma's worker's compensation insurance policy. Benefits were awarded and Custadio has been receiving weekly payments of $ 884.46 in connection with the death of Mr. Custadio since November 26, 2003, approximately six days after the accident took place.

I, Nadilio D. Almeida, do hereby declare under the pains and penalties of perjury that the foregoing is true and correct.

*[signature]*
Nadilio D. Almeida

Dated April 26, 2005

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAIL CUSTADIO,<br>Administratrix of the Estate of Stephen Custadio<br><br>　　　　　　　　　　　Plaintiff,<br>v.<br><br>EUROPEAN COLOUR PLC<br><br>　　　　　　　　　　　Defendant. | Civil Action No. 05-CV-10556-JLT |

**AFFIDAVIT OF STEPHEN RALPH SMITH**

I, Stephen Ralph Smith, state as follows:

1.　　I am an adult resident of the United Kingdom and make this Affidavit based upon my own knowledge.

2.　　I have been Chairman of European Colour plc ("European Colour") since August 4, 2003.

3.　　European Colour is a corporation organized under the laws of England and Wales with a principal place of business located at Hempshaw Lane, Stockport, Cheshire, England.

4.　　At all times since January 2003, European Colour has been, and continues to be, the ultimate parent corporation to Roma Color, Inc. ("Roma") within the European Colour family of corporations. At all times since January 2003, there have been several corporations, each successively owned in whole or in part by parent corporations, between Roma and European Colour. In November 2003 at the time of Mr. Custadio's accident, Roma was wholly owned by a Massachusetts corporation which was then owned by a Massachusetts general partnership, the two partners of which were two separate corporations organized under the laws

of England and Wales, each of which was then in turn owned by European Colour. Today, the corporate structure remains the same except that the Massachusetts partnership has been replaced by a Massachusetts corporation for tax reasons.

5. At all times since at least August 2003, European Colour has had, and continues to have, its own Board of Directors and its own executive officers, separate and independent from any of its subsidiaries, including Roma. In November 2003, European Colour had five directors, one of which was also a director of Roma. Today, European Colour has four directors, two of which are also directors of Roma.

6. All of European Colour's corporate employees, officers, and/or executives are located in the United Kingdom. European Colour does not have corporate offices, corporate employees, officers, and/or executives in Massachusetts.

7. At all times since at least August 2003, European Colour has maintained separate financial records and a bank account separate from Roma.

8. At all times since at least August 2003, European Colour has maintained, and continues to maintain, separate corporate records.

9. At no time since August 2003 has European Colour owned any property in Massachusetts.

10. European Colour has never been registered or licensed to do business in Massachusetts.

11. Since at least August 2003, European Colour has not bought or sold products of any type in Massachusetts.

12. European Colour has not transacted any business in Massachusetts or entered into any contracts in Massachusetts for the purchase or sale of goods and services in Massachusetts.

2

13. European Colour has never paid Massachusetts state taxes or United States federal taxes.

14. Since at least August 2003, European Colour has never supplied, and does not presently supply, any materials of any kind to Roma for its manufacturing operations.

15. Since at least August 2003, European Colour's name has not appeared on any of Roma's marketing brochures, annual reports, letterhead, training manuals, employee safety procedures/handbook, or associate handbook other than to indicate that European Colour is the ultimate parent corporation of Roma.

16. Since at least August 2003, European Colour's officers and/or executives have had limited contact with Massachusetts.

17. European Colour is not responsible for and has never assumed any affirmative legal duty to ensure a safe working environment for Roma's employees. European Colour has also never entered into a contract with Roma to provide safe working conditions for Roma's employees.

18. Since at least August 2003 through the present, European Colour, its executives, directors, and/or employees have not supervised or directed Roma or any of Roma's employees and/or executives regarding the day-to-day operations of Roma or the Roma facility, including the operation, maintenance, and/or repair of the materials lift that was involved in Mr. Custadio's fatal accident (the "lift").

19. Before Mr. Custadio's death, I visited Roma approximately three times. During those visits, I discussed, among other things, the overall safety philosophy and safety considerations regarding the Roma facility with the management of Roma. During these visits and at all other times, I emphasized the importance of safety and encouraged Roma to ensure

safe working practices as a general matter. I further instructed Roma management to disclose any potential hazards to European Colour. At no time did I, or anyone else at European Colour, have any discussions with anyone at Roma concerning the lift prior to Mr. Custadio's fatal accident. Moreover, neither I nor anyone else at European Colour had any knowledge of any potential safety issues, hazards, or concerns relating to the lift prior to Mr. Custadio's death.

I, Stephen Ralph Smith, do hereby declare under the pains and penalties of perjury that the foregoing is true and correct.

_____
Stephen Ralph Smith

Dated April 25, 2005