UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAIL CUSTADIO, ADMINISTRATRIX OF THE ESTATE OF STEPHEN CUSTADIO,<br><br>Plaintiff<br><br>vs.<br><br>EUROPEAN COLOUR PLC,<br><br>Defendant | No. 05-CV-10556-JLT |

**OPPOSITION OF THE PLAINTIFF, GAIL CUSTADIO, TO THE MOTION OF THE DEFEDNANT, EUROPEAN COLOUR, PLC, TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The plaintiff, Gail Custadio ("Custadio"), opposes the Motion to Dismiss or, in the Alternative, for Summary Judgment of the defendant, European Colour, PLC ("European Colour"). As reasons therefor, Custadio states that she has a sufficient basis for believing that European Colour has the necessary minimum contacts to be subject to personal jurisdiction in Massachusetts; that the defendant's affidavits conflict with the limited information available to Custadio; and the Court should allow Custadio adequate opportunity to obtain discovery on this matter before dismissing her claims. As further grounds in support, the plaintiff states as follows:

**STATEMENT OF THE CASE**

On November 20, 2003, Stephen Custadio was working at the Roma Color facility ("Roma") in Fall River Massachusetts. As he attempted to fix a malfunctioning

mechanical lift, the lift suddenly plunged from the second floor to the first floor, fatally injuring Mr. Custadio. Mr. Custadio was attempting to clear a jam on the lift when the accident happened. As the lift plunged 20 feet, he was impaled by a guardrail.[1] (Tab 5) Investigation after the event revealed that the lift was almost 20 years old, had not been properly maintained, and had free-fallen on at least two prior occasions, January 2002 and September 2003. (Tab 5) The lift safety device meant to prevent a free-fall in the event of a mechanical failure was not working. (Tab 5) Mr. Custadio's widow, Gail Custadio, filed her lawsuit against European Colour on January 18, 2005 in Massachusetts State Court. Roma, which is a Massachusetts corporation, was purchased in 1999 by European Colour and owned by European Colour at the time of Mr. Custadio's death. (Tab 1, p. 3)[2] On March 23, 2005, European Colour removed the Custadio action to the U.S. District Court. European Colour was to have answered the Complaint by March 28, 2005. Prior to this deadline, European Colour requested an extension of time to file a responsive pleading, which was granted. On April 27, 2005, European Colour filed its Motion to Dismiss/Summary Judgment in lieu of filing an answer.

In support of its Motion, European Colour attaches the Affidavits of Nadilio Almeida, Manufacturing Manager at Roma, and Stephen Ralph Smith, Chairman of

---

[1] All "tab" references in this Opposition are to the documents attached to the Plaintiff's Response to the L.R. 56.1 Statement of Undisputed Facts of the Defendant, European Colour, and Statement of Material Facts Creating a Genuine Issue to be Tried, which accompanies this Opposition.

[2] The fact that the plaintiff is receiving worker's compensation benefits from Roma is immaterial to this lawsuit. European Colour acknowledges that it is a separate entity from Roma. European Colour is not providing any worker's compensation benefits to Custadio and is not afforded any protection from the Massachusetts Worker's Compensation statute.

European Colour. The existence of these Affidavits has the effect of making European Colour's Motion to Dismiss a Motion for Summary Judgment. European Colour seeks to have the Court consider and rely on the assertions contained in these affidavits without their contents having been subject to or tested by cross-examination or discovery.

For all the reasons stated below, European Colour's Motion should be denied as premature and the Court should allow the plaintiff an opportunity to conduct discovery on the issues raised.

## ARGUMENT

### I. CUSTADIO SHOULD BE ALLOWED TO CONDUCT JURISDICTIONAL DISCOVERY PRIOR TO HER CLAIMS BEING DISMISSED

Where a plaintiff has shown her position not be frivolous, the "customary license" is to allow jurisdictional discovery. *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966). "A plaintiff who is a total stranger to a corporation should not be required … to try such an issue on affidavits without the benefit of full discovery." *Id.* See also, *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079,1086 (1st Cir. 1973) ("Discovery concerning jurisdictional issues is appropriate where complex factual matters are in question….")

European Colour filed its Motion in lieu of filing an Answer. Because absolutely no discovery has been conducted in this case, Custadio has not had an opportunity to fully refute the assertions contained in the affidavits submitted by European Colour. The vast majority of relevant information is under the protection and control of European Colour. Allowing Custadio discovery is the only way for her to gain access to this evidence and the only way to level the playing field.

Under the Rules of Procedure, a plaintiff is entitled to submit affidavits, along with deposition testimony and/or answers to interrogatories, in support of an opposition to a motion based upon affidavits. Custadio is unable to submit supporting documentation because European Colour has filed this motion prior to any discovery. At a minimum, Custadio should be allowed to discover into European Colour's contacts with the Commonwealth of Massachusetts before she is required to submit her Opposition to European Colour's Motion to Dismiss for lack of personal jurisdiction.

In *Boit v. Gar-Tec Products, Inc.*, a case cited by European Colour in its motion, the First Circuit Court of Appeals voices its support for the practice of deferring a ruling on a motion to dismiss for personal jurisdiction pending discovery, going on to add that it could be "an abuse of discretion to disallow discovery before ...[ruling] on [a] motion to dismiss for want of personal jurisdiction where the plaintiff had been diligent and was somewhat unfamiliar with his adversary's business practices." *Boit v. Gar-Tec Products, Inc.,* 967 F.2d. 671, 681 (1st Cir. 1992) Custadio has had no opportunity to conduct discovery and is not privy to the business practices of European Colour as it relates to Roma. For this reason, Custadio should be allowed to conduct jurisdictional discovery.

II.  **EUROPEAN COLOUR'S MOTION SHOULD BE TREATED AS A MOTION FOR SUMMARY JUDGMENT WHICH SHOULD NOT BE DECIDED PRIOR TO COMPLETE DISCOVERY**

Because European Colour's Motion is essentially a Summary Judgment motion, Custadio should be allowed a fair opportunity to conduct discovery before being forced to respond. Federal Rule of Civil Procedure Rule 56(f) allows a party opposing summary judgment to defer judgment in order to be allowed additional time to engage in

discovery that is essential to "mount an opposition." *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 35 (1st Cir. 1995), quoting *Resolution Trust Co. v. North Bridge Assoc.*, 22 F.3d 1198, 1203 (1st Cir. 1994). The intention is to protect the non-moving party from being squeezed out of an appropriate claim before she has had the chance to engage in adequate discovery. *Morrissey*, 54 F.3d 27 at 35. The court is given broad discretion to allow discovery where the non-moving party has demonstrated a plausible basis to believe that facts exist that would likely raise a genuine issue of fact. *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988-89 (1st Cir. 1988). See also, *Citifinancial Mortgage Co. Inc. v. Lawson*, 2002 U.S. Dist. Lexis 15828 (D. Mass., 2002); *Commonwealth Aluminum Corp, et al. v. Markowitz, et al.*, 164 F.R.D. 117 (D. Mass., 1995).

The overwhelming majority of information regarding European Colour's involvement with the Roma facility in Fall River is controlled by European Colour. The likelihood of discovery leading to "essential facts" on this issue is high.[3] It would be inequitable to dismiss Custadio's claims on the basis of the defendant's self-serving affidavits without allowing her the opportunity to conduct any discover at all. For this reason, the defendant's Motion is premature and pursuant to Rule 56(f), Custadio should be given the opportunity to conduct discovery before having to respond to it.

---

[3] Custadio's Rule 56(f) argument is acceptable in the form of representations by her counsel, without the need of supporting affidavits. *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir. 1988).

III. **CUSTADIO CAN PROFFER ENOUGH EVIDENCE TO ESTABLISH A PLAUSIBLE BASIS FOR PERSONAL JURISDICTION OVER EUROPEAN COLOUR OR AT A MINIMUM SUFFICIENT CONFLICT WITH THE AFFIDAVITS OF EUROPEAN COLOUR TO WARRANT DISCOVERY**

   A. **The Limited Amount of Information Available to Custadio Conflicts with the Affidavits Submitted by European Colour.**

It is undisputed that European Colour was a parent company of Roma and derived revenue from Roma's sale of products in Massachusetts. The purposeful decision by European Colour to reach out to Massachusetts is an availment of the Massachusetts marketplace and leads to the inference that it should reasonably anticipate being hauled into court here.

It is also undeniable that European Colour holds itself out as doing business in Massachusetts. The following statements are contained in the 2003 Annual Report of European Colour:

   i) "European Colour employs approximately 190 people at three major manufacturing locations: two in the United Kingdom ... and one in the United States at Fall River, Massachusetts." (Tab 1, p. 3);

   ii) "The business has developed a new three-year strategic plan ... [which includes] a shift in the balance of US manufactured product range away from commodities to higher value-added products...." (Tab 1, p. 3);

   iii) "At the sales level, there was a redefinition of territories both in the UK and US businesses..." (Tab 1, p. 4).

European Colour's only business in the United States is the business of Roma in Fall River, MA. If European Colour played a significant role in the development of a strategic plan and product manufacturing of Roma, it may be subject to personal

jurisdiction in Massachusetts. *See, Whittaker*, 482 F.2d at 1083, (a foreign corporation was subject to personal jurisdiction because it played a significant role in providing plans and product specification to a domestic party). This document implies that European Colour is exerting the type of control over the day to day operations of Roma that would subject it to personal liability in Massachusetts and conflicts with the assertions contained in the Affidavits of Almeida and Smith.

The 2004 Annual Report of European Colour also suggests substantial ties and control over business in Massachusetts:

i) the report is dedicated to the memory of Mr. Custadio. Mr. Custadio is described as a member of the "Fall River Team." (Tab 2);

ii) in his Chairman's statement Steve Smith states "Our teams in the UK and the USA are focused on delivering the products and services that our customers rely on us to provide…. This year was another phase in the rebuilding, refocusing, and invigoration of European Colour and its operating units, EC Pigments in the UK and the USA…. We have also made changes to our organizational approach and the management teams in both the UK and the USA…." (Tab 2, p. 1);

iii) "In Europe and the USA we now serve our customers directly, with local sales representatives and customer services offices in both regions." (Tab 2, p. 2).

As stated above, European Colour's only USA presence is the Roma facility in Fall River, MA. These statements imply a deliberate intent by European Colour to conduct business in Massachusetts in a manner that would subject it to personal jurisdiction.

It is also worth noting that as early as May of 2004 European Colour did fully contemplate being sued in Massachusetts as a result of Mr. Custadio's death. Custadio had obtained a copy of the Minutes of a meeting of the Audit Committee of European Colour dated May 27, 2004. These minutes discuss the potential of a claim by "Mr. Custadio's widow." (Tab 3, 2(i)) They also discuss, in detail, other litigation matters in Massachusetts and make these Massachusetts issues a "regular Board agenda item." (Tab 3, 2(i))

     **B.    The Affidavits Submitted by European Colour Provide Evidence to Support a Claim Against European Colour in Massachusetts.**

In his affidavit, Stephen Smith, Chairman of the Board of European Colour, states: "European Colour's officers and/or executives have had limited contact with Massachusetts." Affidavit of Stephen Smith ("Smith Aff.") at ¶16. Custadio should be allowed to discover the extent of this contact through discovery without having to accept Mr. Smith's characterization of that contact as limited.

Mr. Smith also states in his Affidavit that as Chairman of the Board, he has made at least three business related visits to Massachusetts. Smith Aff. at ¶19. Mr. Smith became Chairman on August 4, 2003, less than four months before Mr. Custadio's death. (Tab 2, p. 6; Tab 4, p. 3). One could argue that one visit per month to discuss safety is enough to establish a duty of care on the part of European Colour. Such contact is another fact supporting European Colour's ties to Massachusetts and control over the operation of the Fall River plant.

Without being allowed proper discovery, only the defendant knows the quantity, quality and depth of these contacts. Whether or not European Colour exercised enough

control over Roma's safety policies in general to create a duty of care is an issue that should only be decided after the plaintiff has had an opportunity to conduct discovery.

### IV.   THE PIERCING THE CORPORATE VEIL DEFENSE OFFERED BY EUROPEAN COLOUR IS PREMATURE

European Colour appears to be erecting barriers to a fair and equitable outcome by positioning its Massachusetts manufacturing plant as a "fifth-tier subsidiary" of European Colour. Defendant, European Colour's Memorandum of Law In Support of its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment at pg. 3. Its public statements are very different. In its 2003 and 2004 Annual Reports, European Colour describes Roma as one of two "principal subsidiaries." (Tab 1, p. 44 and Tab 2, p. 33) European Colour also owns one hundred percent of the stock of Roma. (Tab 1 p. 35)

Further, Custadio does not need to pierce the corporate veil of all subsidiary corporations to reach Roma, she only needs to establish the necessary connection between Roma and European Colour. In its argument against piercing the corporate veil, European Colour states that there are "several corporations, each successively owned in whole or in part by parent corporations between Roma and European Colour." (Motion, p. 4) It does not, however, identify these corporations or explain the corporate relationship of each. Custadio should be allowed to conduct discovery on this issue. In both the *Muniz v. National Can Corp. and Allen v Borden* cases cited extensively by the defendant in its piercing the corporate veil argument, the plaintiff was allowed to conduct substantial discovery before the court addressed the issue. *Muniz v. National Can Corp.*, 737 F.2d 145 (1st Cir. 1984); *Allen v. Borden, Inc.*, Slip Op. No. 92-10005 (D.

Mass., Sept. 16, 1993) (attached as Exhibit 1 to defendant's Motion)  Indeed, in *Allen v. Borden*, the plaintiff was allowed to conduct additional discovery after the summary judgment hearing. *Id*. at n. 3.  As stated before, the only way for Custadio to have a fair opportunity to respond to this issue is by allowing her discovery.

V.      **THE PLAINTIFF HAS SUFFICIENT FACTS TO ASSERT A DIRECT CLAIM OF NEGLIGENCE AGAINST EUROPEAN COLOUR**

In its motion, European Colour mistakenly states that it is not "directly liable" to Custadio.  The available evidence indicates that European Colour's actions may have directly contributed to causing Mr. Custadio's death in a manner sufficient to establish specific personal jurisdiction in Massachusetts.  Custadio has obtained information that European Colour exercised complete control over the Roma facility with regard to major purchases and repairs.  Its control over these decisions would create a duty of care towards the workers at Roma.  Should Custadio be able to establish that a repair was not done because European Colour would not authorize the payment, and this lead to the mechanical lift failure that caused the death of Mr. Custadio, then the plaintiff has a valid direct claim against European Colour.

In response to her Freedom of Information Request, Custadio received documents from the OSHA investigation of this event.  Included in these documents was a letter from Giant Lift Equipment Manufacturing Co. dated December 8, 2003 (Tab 6)  The letter states that on January 18, 2002, Giant Lift sent a quote (# 39768) to Roma for replacing the mechanical lift which caused Mr. Custadio's death[4].  At that time, Roma was informed that the lift was unsafe in its current condition.  (Tab 6)  The

---

[4] EC Pigments is a business name used by Roma.  It may also be one of the "layered" companies referred to by the defendant in its motion.

replacement quote was over $17,000.00. (Tab 6) Also included in the OSHA records are notes dated December 4, 2003 from an interview with Michael Clayton. Mr. Clayton's title at the time was EC Pigments General Manager-USA. According to this document, any repair "over $10,000 needs capital expenditure approval from England." (Tab 5) The new lift was never purchased by Roma prior to Mr. Custadio's death. Instead, a much less expensive component part was purchased and repairs were apparently done "in house." After Mr. Custadio's death, the lift in question and a second lift were rebuilt by Accurate Elevator for $87,000.00, and a maintenance contract was purchased. (Tab 5) If the unsafe lift was not replaced prior to Mr. Custadio's death because European Colour would not approve the expenditure, then it is directly responsible for this accident. This information alone should be enough to subject European Colour to personal jurisdiction in Massachusetts and allow Custadio's claims to proceed.

## CONCLUSION

Under the present circumstances, the Court should defer any action on European Colour's Motion to Dismiss until written and deposition discovery can be conducted on the subject matter of personal jurisdiction. European Colour's Motion to Dismiss/Summary Judgment under a piercing of the corporate veil theory should be denied as premature.

Custadio asks that the Court:

1. deny European Colour's Motion without prejudice;

2. order European Colour to answer the Complaint within 14 days; and

3.  order a Scheduling Conference to discuss the scope of discovery.

## REQUEST FOR ORAL ARGUMENT

The plaintiff, Gail Custadio, requests an oral argument on this matter.

>Respectfully submitted,
>
>PLAINTIFF,
>
>By Her Attorneys,
>
>SUGARMAN AND SUGARMAN, P.C.
>
>/s/Jodi M. Petrucelli
>Neil Sugarman - BBO #484340
>Jodi M. Petrucelli - BBO #561911
>One Beacon Street
>Boston, MA  02108
>(617) 542-1000

Dated: May 27, 2005

IMAN 164659v1